***********
The Full Commission finds as fact and concludes as matters of law the following, as:
 EXHIBITS
1. A document showing how defendants calculated interest was marked as defendant's Exhibit 1 and received into evidence.
2. An affidavit by Beck Karr, Chief Financial Officer for Key Risk Management Services was marked as defendant's Exhibit 2 and received into evidence.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the alleged injury giving rise to this claim, plaintiff was employed as a security guard for JP Looney's Restaurant.
2. On June 30, 1998, plaintiff escorted a customer from the premises of JP Looney's at which time a fight started, and the customer struck plaintiff multiple times on the left side of his head.
3. Prior to the assault, plaintiff had not had any problems moving his jaw from side to side or with feeling like he was chewing grit. Plaintiff also experienced sharp pains, ringing in his ear, and locking of his jaw, all of which were new symptoms after he was assaulted. Plaintiff never had any other injuries to his head, mouth or face prior to the assault at defendant's sports bar.
4. Dr. Miller, an expert in oral and maxillofacial surgery, opined and the Full Commission finds as a fact that plaintiff's symptoms likely occurred as a result of the assault on June 30, 1998. Plaintiff did not have the additional treatment recommended by Dr. Miller and Dr. Willis, because he did not have the money to pay for treatment.
5. The competent evidence in the record establishes that as a result of his compensable injury, plaintiff had paresthesia of his left posterior maxillary teeth.
6. Dr. Miller referred plaintiff to Dr. Steven Gold, a general dentist. Plaintiff presented to Dr. Gold on March 31, 1999 and Dr. Gold put a crown on plaintiff's fractured tooth and last saw plaintiff in May of 1999. Dr. Gold would not see him further after that for additional treatment because plaintiff had not paid his balance.
7. Dr. Miller also referred plaintiff to Dr. J. Bruce Lyon, a general dentist, for cast restorations to repair fractures in his maxillary right first and second bicuspids. Dr. Miller opined plaintiff could have had an undiagnosed hairline fracture or sustained a fracture as a result of the force from clenching his teeth.
8. Plaintiff filed a claim for workers' compensation benefits which was denied by Key Risk Management Services. The matter was heard in Graham, North Carolina on August 25, 2000, by Deputy Commissioner Edward Garner, Jr.
9. On January 24, 2001, Deputy Commissioner Edward Garner, Jr. filed an Opinion and Award wherein he concluded Plaintiff did not prove by the greater weight of the evidence that there was a causal connection between the altercation and his present medical condition which he sought treatment for some five months afterward and denied Plaintiff's claim.
10. Plaintiff appealed to the Full Commission who reviewed Plaintiff `s case on August 29, 2001, and filed an Opinion and Award on March 19, 2002, wherein it was concluded: that Plaintiff had met his burden of showing that the injury complained of resulted from an accident arising out of and in the course of his employment; that Plaintiff was entitled to have Defendants provide all medical compensation arising from this injury by accident, including the medical bills of Dr. Mundy, Dr. Miller, Dr. Willis, Dr. Shapiro and Dr. Gold; that Plaintiff was entitled to, subject to attorney's fees, $1,000.00 for injuries to his face and $1,000.00 for injuries to his jaw with interest on such amounts at 8% per year from August 25, 2000, until paid; that Plaintiff was entitled to continuing medical treatment related to the injury he suffered on June 30, 1998, including the tests recommended by Dr. Willis and follow-up treatment by Dr. Willis and Dr. Mundy; and that Plaintiff's counsel was entitled to a fee of $1,000.00.
11. Upon receipt of the Opinion and Award for the Full Commission, Ms. Lynn Key with Key Risk Management Services calculated interest, in good faith, in the amount of $256.98 and paid the compensation due Plaintiff, including interest and fees, on May 17, 2002.
12. On May 28, 2002, plaintiff's former counsel, Margaret Rowlett, wrote Ms. Lynn Key advising that she thought the amount due in interest should be $280.00, however, she did not indicate how she had arrived at that figure.
13. Ms. Lynn Key then responded to Ms. Rowlett's letter by writing to her on June 3, 2002, indicating that she was unable to review Ms. Rowlett's request with regard to the interest without something from Ms. Rowlett indicating how she arrived at her figures. She asked Ms. Rowlett to forward her calculations so that she could compare them to her own. During the latter part of May 2002, counsel for Key Risk Management Services, Ms. Elizabeth M. Stanaland, closed her file.
14. Shortly thereafter, Ms. Rowlett sent to Ms. Lynn Key statements from various medical providers. However, none of these statements were on the proper billing forms, so Ms. Key's office returned the bills to the providers and requested that they resubmit their billing on the appropriate Industrial Commission forms. Letters to Dr. Mundy at Southeastern ENT, Dr. Gold, Dr. Shapiro and Dr. Miller with Schlanger, Miller, Rehm and Riggs all dated June 19, 2002, were sent by Ms. Key's office.
15. On June 19, 2002, Ms. Key also wrote to Ms. Rowlett advising her what she had done with regard to the outstanding medical expenses and confirmed a conversation that she had previously had with Ms. Rowlett at which time Ms. Rowlett had indicated that Plaintiff would be making appointments with Dr. Willis and Dr. Mundy. In her letter, Ms. Key asked Ms. Rowlett that she be notified in advance of these appointments so that she could arrange for a nurse case manager to attend. Ms. Rowlett never responded to Ms. Key's letter of June 3, 2002, requesting clarification on how she calculated the interest or responded to Ms. Key's letter of June 19, 2002, regarding the scheduling of medical appointments with Drs. Willis and Mundy.
16. Ms. Rowlett never responded to Ms. Key's letter of June 3, 2002, requesting clarification on how she calculated the interest or responded to Ms. Key's letter of June 19, 2002, regarding the scheduling of medical appointments with Drs. Willis and Mundy.
17. As a result of complaints made by the plaintiff, Commissioner Thomas J. Bolch wrote a letter to Margaret Rowlett dated June 25, 2002, wherein he indicated that his calculations of 8% interest on $2,000.00 from August 25, 2000, through May 18, 2002, yielded the amount of $276.92, which meant that the interest check previously paid by Key Risk Management Services was deficient by $19.94.
18. On January 3, 2003, Commissioner Bolch filed an Order to Show Cause scheduling the Motion for hearing on January 29, 2003.
19. On January 6, 2003, Ms. Jeanette L. Foust, with Ms. Sumner's office filed a supplement to the Motion to Show Cause forwarding a bill from J. Bruce Lyon, DDS in the amount of $765.00.
20. Ms. Lynn Key with Key Risk Management Services testified with regard to the expenses for medical treatment which were pending for payment as follows:
Dr. Mundy with Southeastern ENT — Ms. Key testified that after she received a copy of the billing from Ms. Rowlett, that she wrote to Dr. Mundy's office on June 19, 2002, requesting the appropriate billing form. Dr. Mundy's office responded on July 17, 2002, but, again, did not send the appropriate billing form. Ms. Key testified that she has never received the appropriate Industrial Commission billing form from Dr. Mundy. Ms. Sumner did not obtain same prior to the filing of her Motion to Show Cause. It was not until after 5:00pm on the 27th of January that counsel for Defendants received a faxed letter from Ms. Foust indicating there was a balance due Dr. Mundy's office of $723.00 of which amount Plaintiff had paid $55.00 out of pocket. Ms. Key testified that she was agreeable to paying the outstanding balance once it was submitted on the appropriate Industrial Commission form at which time the provider would have to reimburse Plaintiff the $55.00 out of pocket expenses he incurred.
Dr. Gold — Ms. Sumner attached to the Motion to Show Cause a billing ledger reflecting Dr. Gold started charging interest as of June 3, 1999, well before this matter was heard initially by Deputy Commissioner Garner. Ms. Key testified that she received a bill from Dr. Gold for $1,580.64 on June 3, 2002. It was not on the proper Industrial Commission billing form, so she returned it, along with others, on June 19, 2002, requesting the appropriate billing form. Key Risk received another bill from Dr. Gold on July 17, 2002, which still was not submitted on the proper Industrial Commission form. It was also returned. Key Risk subsequently received appropriate billing forms from Dr. Gold and paid Dr. Gold $558.00 on October 17, 2002, and $112.00 on October 28, 2002, per the fee schedule. Information received from Ms. Foust on January 27, 2003, reflected a balance due for interest charges of $867.42, which were not approved by the Industrial Commission.
Dr. Shapiro with Shapiro Eye Care — Ms. Sumner attached the appropriate Industrial Commission billing form to her Motion to Show Cause reflecting a balance due Dr. Shapiro of $75.00. Ms. Key testified that the initial bill from Shapiro Eye Care was returned on June 19, 2002, with a request for submission of the appropriate billing form. She never received a revised bill until the bill was attached to Ms. Sumner's Motion to Show Cause. She did receive a response from Shapiro Eye Care indicating that the bill had been turned over to collections on July 1, 2002. She again requested the proper billing form on September 18, 2002. Upon receipt of the appropriate billing form attached to Ms. Sumner's Motion to Show Cause, she has approved this bill for payment and it is being processed for same.
Dr. Willis with Guilford Neurological Associates — Ms. Sumner did not attach any billing from Dr. Willis to her Motion. Information received by counsel for Defendants on January 27, 2003, reflected a balance due of $225.00. Ms. Key testified that she received Dr. Willis' billing for the first time on the appropriate Industrial Commission form on December 27, 2002, at which point she approved it for payment. Dr. Miller with Schlanger, Miller, Rehm Riggs — Ms. Sumner attached to the Motion to Show Cause a proposed treatment plan which is not a bill and is not appropriate for payment. She also attached a bill in the amount of $80.00 due Dr. Miller on the appropriate Industrial Commission form. Ms. Key testified that she has already authorized payment of this bill. The other billing that was attached to Ms. Sumner's Motion, again, was not on the proper billing form. On January 27, two days prior to the hearing, counsel for Defendants received appropriate billing forms from Dr. Miller reflecting a balance due of $760.00. Ms. Key testified that she wrote to Dr. Miller's office requesting proper billing forms on June 19, 2002. Thereafter, she attempted to submit a bill received from Dr. Miller, however, the billing was returned to Key Risk because it did not contain CPT codes. On August 28, 2002, Ms. Key returned the bill to Dr. Miller's office for proper billing forms. She again received billing from Dr. Miller on November 12, 2002, and again attempted to pay it. However, it was once again returned for failure to provide appropriate CPT codes and a tax identification number. Upon receipt of the additional billing information from Dr. Miller by Ms. Key on or about January 28, 2002, she testified that she had approved same and it was currently pending for payment.
Plaintiff supplemented the Motion to Show Cause with a bill from Dr. J. Bruce Lyon in the amount of $1,580.00 for treatment received by Plaintiff to teeth #4 and #5 for treatment received in October and November 2000. This treatment was received just after the initial hearing before Deputy Commissioner Garner and prior to the closing of the record. Ms. Rowlett, Plaintiff's former counsel, never mentioned Dr. Lyon's treatment or forwarded this bill to Key Risk for payment. Furthermore, this billing was never addressed in the contentions submitted to Deputy Commissioner Garner, in the Opinion and Award filed by Deputy Commissioner Garner, or in the Opinion and Award by the Full Commission. Ms. Key testified that she had never received any billing from Dr. Lyons until following receipt of the Motion to Show Cause, and that she had never received the medical records associated with the billing.
21. The evidence reflects that Ms. Key, on behalf of Key Risk Management Services, has made reasonable efforts to get the medical expenses from Drs. Mundy, Gold, Shapiro, Willis and Miller paid.
22. Ms. Key testified that in calculating the interest due on $2,000.00 at 8% per year, that she calculated interest for the 1st year to be $160.00 and interest for the second partial year from August 25, 2001 to May 17, 2002, which she counted to be 205 days, to be $96.98. She added $160.00 and $96.98 for a total of $256.98 for interest due through May 17, 2002. The undersigned has determined that Ms. Key miscalculated the number of days from August 25, 2001 to May 17, 2002, and that the correct number of days is 265. The undersigned finds that the correct amount of interest due is $276.17, which leaves a deficiency of $20.09 due Plaintiff in interest.
23. The undersigned finds that Ms. Key did not commit a contemptible act regarding the non-payment of medical expenses as she has made reasonable efforts to get the past medical expenses due paid.
24. The undersigned finds Ms. Key's calculation of the interest due was a clerical mistake.
25. Ms. Key upon receipt of the Motion to Show Cause, was on notice of the letter from Commissioner Bolch that he was in agreement with the plaintiff on the issue of underpayment of interest.
26. Furthermore, Ms. Key had requested that the defendant-carrier's chief financial officer Becky Carr review the calculation of interest. Rather than check to make sure that the number of days between August 8, 2001 and May 17, 2002 had been counted properly, Ms. Karr merely used the same figures that Ms. Key used in arriving at the wrong amount in calculating interest. Ms. Karr did not make a good faith effort to properly calculate interest; however, the conduct of Ms. Key and Ms. Karr did not rise to the level of contempt.
27. The competent evidence in the record establishes that plaintiff's Motion to Show Cause why Ms. Key should not be held in civil contempt for willful refusal to pay medical expenses is denied. Plaintiff's Motion to Show Cause why Ms. Key should not be held in civil contempt for willful refusal to pay the deficiency in interest is also denied.
28. Pursuant to an Order filed by the Full Commission panel on September 25, 2003, the parties were ordered to submit a plan to resolve plaintiff's out-of-pocket costs and necessary medical treatment. After several attempts by plaintiff's counsel to settle these matters, defendants have failed to make any efforts to resolve or clarify these issues. Defendants blatantly disregarded the September 25, 2003 Order.
29. Defendants' contend, and the Full Commission finds as fact, that upon receiving proper billing forms from Dr. Miller, payment was issued in the amount of $764.83 on February 4, 2004. Furthermore, Plaintiff was reimbursed $55.00 by Southeastern ENT on July 11, 2003 and again by Key Risk in January 2004.
30. Dr. Lyon opines in his letter, dated October 11, 2000, that he repaired plaintiff's teeth #4 and #5 (maxillary right first and second bicuspids) that were fractured in an accident occurring two years prior to treatment. The Full Commission makes a reasonable inference that the injury to plaintiff's teeth referenced by Dr. Lyon in his October 11, 2000 letter resulted from plaintiff's June 30, 1998 injury by accident.
31. The credible evidence of record supports a finding that plaintiff's treatment by Dr. Lyon was reasonably related to his compensable injury.
32. The greater weight of the evidence establishes that plaintiff's injuries and subsequent medical treatment are a proximate result of plaintiff's injury by accident of June 30, 1998.
33. Plaintiff continues to need medical services and prescription medicine by reason of his compensable injuries and will continue to need such services in the foreseeable future.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. Plaintiff has met his burden in this case by establishing that the injury complained of resulted from an accident arising out of and in the course of his employment. The assault on plaintiff came during the course and scope of his employment. N.C. Gen. Stat. § 97-2(6); Henry v. A.C. Lawrence LeatherCompany, 321 N.C. 477, 57 S.E.2d 760 (1950).
2. Plaintiff suffered a compensable injury by accident and plaintiff was entitled to have defendants provide all medical compensation arising from this injury by accident, including the medical bills of Dr. Mundy, Dr. Miller, Dr. Willis, Dr. Shapiro, Dr. Lyon and Dr. Gold. N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to compensation for the permanent damage he sustained to his face, specifically, the numbness to the left side of his face, the damage to his jaw joint, the blurring of his vision and his hearing loss. The Full Commission finds reasonable compensation to be $1,000.00 for injuries to his face, including the blurring of his vision and his hearing loss. The Full Commission finds reasonable compensation to be $1,000.00 for injuries to plaintiff's jaw. N.C. Gen. Stat. § 97-31(24).
4. Plaintiff is entitled to continuing medical treatment related to the injury he suffered on June 30, 1998, including the tests recommended by Dr. Willis and follow-up treatment by Dr. Willis and Dr. Mundy. N.C. Gen. Stat. § 97-25.1.
5. Plaintiff is entitled to immediate reimbursement for his out-of pocket expenses relating to his injury by accident, including, but not limited to expenses paid to Drs. Mundy and Lyon. Plaintiff is entitled to receive $1,537.00 as reimbursement from Defendant for services rendered by Dr. Lyon.
6. In that defendants failed to file one of the necessary forms to admit liability for benefits and in that they have failed to provide any reason for this omission, it appears that sanctions in the amount of $1,000.00 should be assessed against them. N.C. Gen. Stat. § 97-18; Rules 103, 501 and 802, Workers' Compensation Rules of the North Carolina Industrial Commission.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendants shall pay to plaintiff, subject to attorney fees hereafter allowed, $1,000.00 for the injuries to his face and $1,000.00 for the injuries to his jaw, with interest on such amounts at 8 percent per year from August 25, 2000 until paid.
2. Defendants shall reimburse plaintiff $1,537.00 for out-of-pocket expenses paid to Dr. Lyon. The portions of this amount that has accrued shall be paid in a lump sum due to the plaintiff.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due under Paragraph 3 of this Award is approved for plaintiff's counsel and shall be paid by defendant to the plaintiff's counsel by deducting from the accrued sum and paying directly to the plaintiff's counsel and thereafter paying every fourth check to the plaintiff's counsel.
4. As defendants failed to file one of the required forms, defendants shall pay $1,000.00 to plaintiff's attorney in addition to the above approved attorneys fee.
5. Defendants shall pay the costs of this action.
This the ___ day of June, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER